Kenneth L Allen
10055 E Gray Hawk Dr
Tucson Arizona 85730
520-514-9704
kenandbetseyallen@msn.com
in Proper Person

## United States District Court

## District of Arizona

Kenneth Allen )  Case No.: No. 09-CV-00373-TUC-FRZ
)
          Plaintiff, )  **Amended Complaint**
)
vs. )
**DHS [Department of Homeland Security]** )
**and the US Department of State; et al.** )
)
          Defendant's )

**Inclusive 1 thru 48**

1.  This Court Has Jurisdiction over this case pursuant to Title 28 USC § 1340 and exclusive Jurisdiction over the case pursuant to Title 5 USC § 552 (a) (4) (b) and Under Title 5 USC § 552 (a) (g) (1) and the subject matter herein and has exclusive jurisdiction over any civil action arising under any act of Congress. This complaint also arises under Article II section I of the United States Constitution and Title 44 Chapter 33.

2.  This is proper Venue, venue arises under Title 28 USC § 1391.

### Complaint for Injunctive Relief

3.  This is an action pursuant to the Freedom Of Information Act "(FOIA)", Title 5 § 552 and 552(a) and the Article II § I of the United States Constitution, for injunctive and other appropriate relief, and seeking the immediate processing and release of agency records requested by the plaintiff (Kenneth Allen) from the Defendants, with regards to Barry Soetoro, Stanley Ann Soetoro and Lolo Soetoro and all known and unknown alias.

4.  The Defendants, herein named ( **Department of Homeland Security (DHS)**, **Immigration and Citizenship and the US Department of State** ) do business in the State Of Arizona as

1

a Federal entity, and will be served at the addresses named herein and above in the caption.

5. That the Plaintiff (Kenneth Allen), appearing here in proper person, resides in the State of Arizona, City of Tucson, county of Pima, With an Address of 10055 E Gray Hawk Dr, Tucson, Arizona 85730.

6. The true names and capacities, whether individual, corporate, associate, representative, or otherwise of the defendants **(DHS, and the Department of State)** named herein as does 1 through 42, inclusive, are known to the plaintiff, However Plaintiff sues' said defendants for information and document's under the FOIA complaint for requested documents regarding Barry Soetoro and such fictitious names as Barack Obama, Barry Soetoro and all other named and unnamed defendants. The plaintiff will amend this complaint to show their true names and capacities when the same has been ascertained. Plaintiff is informed and believe that and allege that each of the unknown defendants are equally responsible in some manner for the deprivation claimed and challenged herein, and caused by defendants conduct.

7. Plaintiff is hereby informed and believe, and upon alleged, that all times relevant and material hereto, defendants does 1 through 49 inclusive, where they were acting within the scope and course of a government agency as defined in Title 5 USC § 552 and 552(a)

8. Paragraphs 1 through 7, hereby and above, are hereby incorporated by reference into each and every claim for relief asserted herein below, unless the context clearly indicates otherwise.

9. There are three jurisdictional elements which must be satisfied before a court can grant relief in an FOIA suit: **(1) that agency _withheld_ records which are (2) _agency_ records and (3) this withholding has been _improper  and withholding of the document pertaining to Barry Soetoro  are improper if the agency is withholding the document's that should have been in their possession withholding has occurred within the meaning of the FOIA when an agency declines to produce agency records which it has a legal right to control and possess ; Kissinger v. Reporters Committee, 445 U.S._**

**160-164 (1980). <u>Most of if not all of the agency record pertaining to Barry Soetoro are</u>**
**<u>not private records, in fact should be open public.</u>**

10. This complaint is the result of the defendants blatant refusal to produce documents requested by the Plaintiff (Kenneth Allen) pursuant to Title 5 USC § 552 and 552(a) and in a timely manner or for non answer by the State Department, and stalling tactics by Home Land security and then a denial.

11. On his first day in office, Monday, January 26, 2009 Part VIII The President signed **Executive Order 13489**—Presidential Records **Executive Order** 13490—Ethics Commitments.  This order was entered into the Federal Register on January 26, 2009. **<u>However this complaint pertains to Barry Soetoro, Stanley A Soetoro and Lolo</u>** **<u>Soetoro  exclusively.</u>**

12. What this executive order says, is that only the Attorney General (Eric Holder) and Council to the President, (Gregory Craig) are able to review presidential records requests and determine if they can be made public or not. (See Section 3).

13. Because that Barack Obama denies the he was ever called Barry Soetoro it shouldn't be a problem with transparency when it come to producing the requested records pursuant to Title 5USC § 552 and 552(a). And because Barry Soetoro is not a citizen as defined by the Law he isn't protected by the (FOIA).

14. The original FOIA was dated February 9th 2009 and was a request for information and records relating to Barack H Obama aka Barry Soetoro.

15.  Department of Home Land Security advised me February 19th 2009 that I needed to Obtain permission from Barack Obama and assigned me a response number of NRC 2009008466. They also requested that I modify my FOIA.

16.  I therefore modified the request and a new request was made on March 1 2009, certified number 70081140000373751719 with a request to secure documents relating to Barry Soetoro, Stanley Ann Soetoro and Lolo Soetoro. They also requested that I write and request permission for Barry Soetoros records, at the same time they asked me for Barry Soetoros Alien number, therefore the request had become a request for records under Title

5 USC § 552 and 552(a) for applications from Aliens for US passports and Visas requested by non-citizens to enter the US by the name of Barry Soetoro, Stanley Ann Soetoro or Lolo Soetoro or by any other name aka known and unknown, et al and for information relating to Stanley Ann Dunham, aka Stanley Ann Soetoro.

17.  The request under the FOIA and Article II § I would not be private information but should have been public information and of interest to the public.

18.  To make it very clear to DHS and to US Citizenship and Immigration I gave them a brief history of Barry Soetoro as I will here for the court, I believe it is important for the court to understand why its is so important that these documents should be released to the public.

19.  Barry Soetoro's mother, Stanle Ann Soetoro; aka Stanley Ann Obama; aka Stanley Ann Dunham had to relinquish her son's citizenship in order to obtain Indonesian Citizenship. The US could not allow dual citizenship with Indonesia at the time; as Indonesia did not allow dual citizenship. It was prohibited by the hague convention of 1930, as interfering with internal affairs of another sovereign country.

20. Additionally, assuming Barry Soetoro was born in what is now Kenya, at the time of Senator Obama's birth in 1961, Kenya was the British Protectorate of Zanzibar and Barry Soetoro automatically became a British Subject under Section 32(1) of the British Nationality Act of 1948, effective date January 28, 1949, based on his father's citizenship.

21.  Finally, in 1981, Barry Soetoro traveled to Pakistan, when there was a ban for U.S. citizens to travel to Pakistan, therefore the only logical possibility for him to do so was by using one of his other passports: Indonesian, Kenyan, or British.

22.  In original legal action filed by Mr. Berg, he presented Barry Soetoro's school registration, showing him registered as Barry Soetoro, Citizenship-Indonesian, Religion Islam, signed by L. Soetoro. From 1945, Indonesia has not allowed dual citizenship and, therefore, Ms. Dunham-Obama-Soetoro, Barry Soetoro's mother, had to relinquish her son's U.S.citizenship in order to obtain Indonesian citizenship for him, which would make him a citizen of Indonesia  and no loner a citizen of Kenya or even the United States had he been born there.. Additionally, the United States could not allow dual citizenship with Indonesia at

1    that time, as Indonesia did not allow dual citizenship, and it was prohibited by the Hague

2    Convention of 1930, as interfering with the internal affairs of another sovereign Country.

3    23.  Therefore my request being modified as requested was for; an original copy of the

4    immigration records pertaining to Barry Soetoro [adopted in Indonesia], returned to Hawaii in

5    1971, if any. Documents as to whether Barry Soetoro is still an Indonesian citizen; and if he

6    is not; documentation of when he became a naturalized citizen pursuant to the 14th

7    Amendment. True and correct copies of Barry Soetoro passports for the years: 1979, 1980,

8    1981 and 1982, including, but not limited to:  A true and correct copy of Barry Soetoro's

9    "Indonesian" passport for the years: 1979, 1980, 1981 and 1982; A true and correct copy of

10   Barry Soetoro's passport including documented history of travel to Pakistan, and nationality

11   contained therein for the years 1981 and 1982. Any all of the above requested

12   documentation should include, and not be limited to: notes, changes, requests for changes,

13   omissions, exclusions, deletions or redactions. A true and correct copy of Stanley Ann

14   Obama, aka Stanley Ann Dunhams, aka Stanley Ann Soetoro's passport, and all history for

15   the years 1959 through 1987 this request is not subject to 6 CFR section 5.21(f), the subject

16   is deceased. A true and correct copy of the passport history of Lolo Setoro, M A.  This

17   request is not subject to 6 CFR sections 5.21(f).

18   24.  I stated that I was entitled to verified copies of all requested documents under statutory

19   authority. I also promised to pay any fees although I think this would fall under a media

20   request and exempt from fees. I reminded them if they couldn't produce the document to

21   please state so. Therefore any and all of the requested documents under 5USC §§ 552 and

22   552(a) and the constitution should include, and not be limited to: notes, changes, omissions,

23   exclusions, deletions or redactions.

24   25.  The FOIA Act protects Citizens and residents here permanently and not illegally, according

25   to the Federal Trade Commission and the commissioner and the commissioner Christine A.

26   Varney "commissioner the FOIA does not protect a foreigner or alien that are not a

27   Permanent resident of the United States of America. The following document was prepared

28   in part by the Commissioner.

26. The Privacy Act does have some limitations. Critics have charged, despite the generally laudable goals of the Privacy Act, that the Act's "routine use" exception and the "law enforcement" exception undermine the values of transparency and enhanced protection for sensitive formation. Limited remedies may also diminish enforceability. Finally, the Privacy Act applies only to federal government agencies. It does not cover state and local agencies, Congress, or the private sector. The Act also only protects U.S. citizens and aliens with permanent residence. The Privacy Act does not apply to foreigners, unions, collective associations, or corporations. To that end, the U.S. Office of Management and Budget (OMB) are responsible for the Act's implementation and is considering needed policy changes. Substantive changes in the Privacy Act, however, must await Congressional action.

27. As a reminder the 4th and 14th Amendment's protection may not extend to an illegal alien. And the Government isn't obligated to protect information belonging to foreigners or need permission as required under 6 CFR § 5.21(f). It also doesn't require me to present an application for information on an alien, and I do not know what his Alien number is that's why I filed this FOIA to obtain that information. Barry Soetoro is not a citizen of the United States or an alien with a permanent residence, Mr. Soetoro is a citizen of Indonesia, and you may refer to the school records attached from Barry Soetoros School in Indonesia. I can however give you the names of his Mother [Stanley Ann Soetoro] and Father [Lolo Soetoro] with an Address of Menteng Dalam r001/003 and a residence date of 1-1-1968. So we know that Barry Soetoro was an Indonesian citizen at the age of 7 and that he had ties in Hawaii. It would seem that Mr. Soetoro would have gone through immigration and customs at some point between 1961 and 2009.

28. Barry Soetoro's religion is Islam, or it was in 1968 no one can know what it is in 2009. 5 U.S.C. § 552(a)(3)(A) (2000 & Supp. IV 2004) (providing that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person"). But see id. At § 552(a)

(3) (E) (prohibiting, as of 2002, certain agency FOIA disclosures to foreign governments or representatives of such governments); see also FOIA Post, "FOIA Amended by Intelligence Authorization Act" (posted 12/23/02) (advising on 2002 FOIA amendments' implementation).

29. Mr. Barry Soetoro may also be guilty of the following, even under the guise of another person; Inadmissible Aliens - Any alien who at the time of entry, or while adjusting status was within an inadmissible class. INA§237 (a)(1)(A);  Presently in Violation of Law  - Any alien who is present in the United States in violation Violated Nonimmigrant Status or Condition of Entry INA§237 (a)(1)(C);  of this Act, or any other law of the United States. INA §237 (a)(1)(B); Smuggling - Any alien who encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of the law. INA §237 (a)(1)(E);Marriage Fraud INA §237 (a)(1)(G); Criminal Offenses INA §237 (a)(2)(A) and (B); Document Fraud INA §237 (a)(3)(C); Falsely Claiming Citizenship - Any alien who falsely represents, or has falsely represented, him or herself to be a citizen of the United States for any purpose or benefit. INA §237 (a) (3) (D);

30. I would hope that the agency if the have any information on the person named Barry Soetoro would produce the requested documents if in fact they exist.(citing Nation Magazine, 71 F.3d at 890)); see Horsehead Indus. v. EPA, No. 94-1299, slip op. at 4 n.2 (D.D.C. Jan. 3, 1997) (ruling that "[b]y construing the FOIA request narrowly, [the agency] seeks to avoid disclosing information"); FOIA Update, Vol. XVI, No. 3, at 3 (advising agencies on interpretation of terms of FOIA re an agency "must be careful not to read [a] request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester."Specifically, agencies should be careful to undertake any "scoping" of documents found in response to a request only with full communication with the FOIA requester. I believe my request to be reasonable and I believe the information I have provided to the agency to be adequate to find the records. See 5 U.S.C. § 552(a)(3)(A) (2000 & Supp. IV 2004) (statutory provision requiring that a FOIA request "reasonably describe[]" the records sought; see also, e.g., Ledesma v. U.S. Marshals Serv., No. 05-5150, 2006 U.S. App. LEXIS 11218, at *2 (D.C. Cir. Apr. 19,

1    2006). The FOIA requires that "any reasonably segregable portion of a record" must be

2    released after appropriate application of the Act's nine exemptions.

3    31.   According to judicial watch and Tom Fitton."Sanctuary policies are affront to the rule of law,

4    worsen illegal immigration crises, and put American citizens at risk," said Judicial Watch

5    President Tom Fitton.  "Local police departments cannot continue to undermine federal

6    immigration law.  The Chicago Police Department should be required to comply with the

7    Illinois Freedom of Information Act so taxpayers can understand its immigration policies."His

8    case also illustrates, however, the value of the FOIA. The public clearly has a "substantial

9    interest" in knowing the identities of criminals among us; that's why we see "Wanted by the

10   FBI" posters in every U.S. Post Office in America. It's why police so often ask the public for

11   help in finding accused criminals who are at large. It's why the "Amber" system works so

12   well in finding kidnapped kids. It's also why the Save acts works; employers are able to

13   identify aliens who use fraudulent document to acquire a job.

14   32.   In a case before the Supreme in 1990 brought by The American Civil Liberties Union and

15   Computer Professionals for Social Responsibility in of Respondents  No. 90-747, the case

16   being about  how to evaluate competing interests in privacy and open government under

17   Exemption .  That exemption provides that agencies may withhold only personal information

18   "the disclosure of which would constitute a clearly unwarranted invasion of personal

19   privacy." 5 U.S.C. S. 552(b) (6) (1986) (emphasis added).  Although the names and

20   addresses at issue here are personal information that implicates an Exemption 6 privacy

21   interest, that interest does not outweigh the strong public interest in the light that their

22   release would shed on implementation of the Government's immigration policy.  Thus, their

23   disclosure would not "constitute a clearly unwarranted invasion of personal privacy," and

24   FOIA compels their release.

25   33.   The Government also ignores the full range of public interests to be considered in

26   Exemption 6 and 7(C) cases.  Consistent with FOIA's general philosophy of full disclosure,

27   this Court has long held that FOIA's disclosure requirements are to be read broadly and its

28   exemptions Construed narrowly. U.S. Dept. of Justice v. Julian, 486 U.S. 1, 8 (1988) (citing

1   FBI v. Abramson, 456 U.S. 615, 630 (1982); Dept. of the Air Force v. Rose, 425 U.S. 352,

2   361 (1976)).  This interpretive maxim requires a broad definition of the public interests to be

3   considered in Exemption 6 and 7(C) cases.  Thus, Reporters Committee held that courts

4   considering the public-interest side of the balance in such cases must determine whether

5   release of the requested information would "shed any light on the conduct of any

6   Government agency or official." 489 U.S. at 773 (emphasis added).

7   34.  The information Requester seek in this case undeniably would shed light on the

8   Department of Homeland Security and US Citizenship and Immigration Services conduct

9   concerning its Indonesian and foreign repatriation policy. Due to the fact that Ms Napolitano

10  believes Veterans and 2nd amendment  and pro-life supporters should be considered

11  terrorists than she shouldn't have any problems with the release of the names and

12  addresses that would reveal the source of the facts underlying an aspect of the nation's

13  immigration policy where it pertains to Barry Soetoro, Stanley Ann Soetoro and Lolo

14  Soetoro.  It would further FOIA's "basic purpose . . . 'to open agency action to the light of

15  public scrutiny,'" Rose, 425 U.S. at 372, by telling the public against whom the Government

16  enforced its policy of repatriation and upon whom the Department of Homeland Security

17  relied in evaluating that policy and in deciding to continue it therefore denying my request for

18  records concerning Barry Soetoro and his connection to Barack H. Obama. Exemption 7

19  only protects private information of citizens and Permanent residents, not of illegal aliens or

20  unregistered aliens.

21  35.  **None of the answers from the defendants even mention Lolo Soetoro, we know that**

22  **Lolo Soetoro was in Hawaii in 1980 to sign divorce papers fro Stanley Ann Soetoro,**

23  **there fore they have willfully withheld any document with respect to him and he was**

24  **one of three persons that requests were made for as in Barry Soetoro's case the**

25  **Government must prove that exeption 6 and 7 would apply to Lolo Soetoro.**

26  36.  The public has a strong interest in knowing the names and addresses of Barry Soetoro

27  because their disclosure would shed light on the Department's performance of its duty to

28  monitor Indonesian and unlawful entry into the United States and on the Government's

1   decision to continue its policy of repatriating In contrast, the Government has failed to

2   demonstrate the existence of a strong privacy interest on the part of the interviewees.  Thus,

3   in this case, the public interest in disclosure outweighs the limited privacy interest implicated

4   by revealing the identities of Barry Soetoro, et al. Government has failed to establish that

5   any invasion of privacy would result from disclosure would be "clearly unwarranted."

6   Accordingly, this appeal should be granted and the requested information herein should be

7   released.

8   37. Exemption 7(C), by its terms, permits an agency to withhold a document only when

9   revelation "could reasonably be expected to constitute an unwarranted invasion of personal

10   privacy." We must next address what factors might warrant an invasion of the interest

11   described in FOIA.

12   38. United States Department of Justice v. Julian, 486 U.S. 1, 13 -14 (1988), and although the

13   FBI's policy of granting the subject of a rap sheet access to his own criminal history is

14   consistent with its policy of denying access to all other members of the general public, see

15   supra, at 752, the rights of the two press respondents in this case are no different from

16   those that might be asserted by any other third party, such as a neighbor or prospective

17   employer. As we have repeatedly stated, Congress "clearly intended" the FOIA "to give any

18   member of the public as much right to disclosure as one with a special interest [in a

19   particular document]." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see NLRB

20   v. Robbins Tire & Rubber Co., 437 U.S. 214, 221 (1978); FBI v. Abramson, 456 U.S. 615

21   (1982). As Professor [489 U.S. 749, 772]   Davis explained: "The Act's sole concern is with

22   what must be made public or not made public."

23   39. Thus whether disclosure of a private document under Exemption 7(C) is warranted must

24   turn on the nature of the requested document and its relationship to "the basic purpose of

25   the Freedom of Information Act `to open agency action to the light of public scrutiny.'"

26   Department of Air Force v. Rose, 425 U.S., at 372 , rather than on the particular purpose for

27   which the document is being requested. In our leading case on the FOIA, we declared that

28   the Act was designed to create a broad right of access to "official information." EPA v. Mink,

410 U.S. 73, 80 (1973). 20 In his dissent in that case, Justice Douglas characterized the philosophy of the statute by quoting this comment by Henry Steele Commager:

40. "'The generation that made the nation thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted [489 U.S. 749, 773]  to know what their government is up to.'" Id., at 105 (quoting from The New York Review of Books, Oct. 5, 1972, p. 7) (emphasis added).

41.  This basic policy of "full agency disclosure unless information is exempted under clearly delineated statutory language,'" Department of Air Force v. Rose, 425 U.S., at 360 -361 (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)), indeed focuses on the citizens' right to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct. In this case - and presumably in the typical case in which one private citizen is seeking information about another - the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed any light on the conduct of any Government agency or official.

42.  Requestor argues that there is a twofold public interest in learning about Barry Soetoro's past. What I have said should make clear that the public interest in the release of any information requested on Barry Soetoro that may exist is not the type of interest protected by the FOIA. But that interest falls outside the ambit of the public interest that the FOIA was enacted to serve.

43.  Finally, we note that Congress has provided that the standard fees for production of documents under the FOIA shall be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of

the requester." 5 U.S.C. 552(a)(4)(A)(iii) (1982 ed., Supp. V). Although such a provision obviously implies that there will be requests that do not meet such a "public interest" standard, we think it relevant to today's inquiry regarding the public interest in release of information on Barry Soetoro records. Congress once again expressed the core purpose of the FOIA as "contributing significantly to public understanding of the operations or activities of the government.

44. The Requester see's disclosure of any record(s), document(s), file(s), communications, memorandum(a), order(s), agreement(s) and/or instruction(s), created from 1961 to the present, that were prepared, received, transmitted, collected and/or maintained by the U.S. Citizenship and Immigration Services  or any of its components, including but not limited to the Counterintelligence Field Activity Agency for Barry Soetoro or his father and mother Lolo Soetoro and Stanley Ann Soetoro **that have been improperly withheld and are agency records..**

### First Cause of Action

Violation of the FOIA for failure to Timely respond to Plaintiff (Kenneth Allen's) requests.

43. Plaintiff repeats' and realloge paragraphs 1-48 .

44. Defendant's failure to respond timely to Plaintiffs requests as did the **Department of State and Department of Homeland Security** violates the FOIA, 5 USC § 552 and 552(a) (6) (i), and DOJ's own regulations promulgated thereunder, 28 CFR § 16.6 (b).

### Second Cause of Action

Violation of the FOIA for failure to expedite the preprocessing of the Plaintiffs requests.

45. Plaintiff repeats and reallege paragraphs 1-48.

46. Defendants failure expedite the processing of plaintiffs request violates the FOIA., 5 USC § 552 and 552 (a) (6) (E) (iii), and the DOJ's own regulations under 28 CFR § 16.5 (d).

### Third Cause of Action

47. Plaintiffs repeat and reallege paragraphs 1-48.

48. Defendants **DHS and US State Department's** failure to make promptly available the records sought by Plaintiff, violates Title 5 USC § 552 and 552(a) (3) (A).

## Conclusion

In conclusion the **Plaintiff** named here as Kenneth Allen, hereby requests that the information requested under 5 USC §§ 552 and 552(a) with respect to Barry Soetoro, Lolo Soetoro and Stanley Ann Soetoro be released in the interests of the public good.  The public interest in the release of any information requested on Barry Soetoro that may exist is not the type of interest protected by the FOIA. But that interest falls outside the ambit of the public interest that the FOIA was enacted to serve. And as a member of Judicial Watch, I also feel it is in the interest of National Security that these documents be released.

## Requested Relief

A. Order Defendants immediately to process plaintiff's FOIA requests and to disclose the requested records;

B. Order defendants immediately to process plaintiffs FOIA requests and to disclose the requested records **for Barry Soetoro, Stanley Ann Soetoro and Lolo Soetoro** ;

C.  Order defendants to immediately expedite the requested records, and to be transparent as to which records they have and which records they intend on disclosing.

D. An Order declaring the defendants actions in violation of the FOIA, Title 5 USC § 552 and 552 (a) and Article II § I.

E. And for any further relief that this court deems just and proper.

I declare under the penalty of perjury that the foregoing complaint is true and correct to the best of my knowledge and belief, respectfully submitted by:

Kenneth L Allen

10055 E Gray Hawk Dr

Tucson, Arizona 85730

520-514-9704